## HOPKINS, ASSESSOR, ET AL. v. SOUTHERN CALIFORNIA TELEPHONE COMPANY ET AL.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 133.   Argued December 8, 1927.—Decided January 3, 1928.

1. Where a bill in the District Court to enjoin state officials from enforcing a property tax raises substantial questions as to its validity under the Fourteenth Amendment, the court has jurisdiction even though its validity under the state law is also questioned and has not been decided by the courts of the State.   P. 398.

2. The District Court, having thus acquired jurisdiction as a federal court, all material questions, state or federal, are open for decision. *Id.*

3. The equity jurisdiction, also, exists in such a case if the legal remedy of paying the tax and suing to recover is doubtful under the state law, would not include interest, and would involve a multiplicity of suits.   P. 399.

4. A rehearing granted by the Supreme Court of California vacates the previous opinion and judgment, and sets the whole matter at large.   P. 400.

5. Under the constitution (Art. XIII, § 14) and statutes of California, telephone companies pay a state property tax upon their franchises, poles, wires and other property used exclusively in the operation of their business in the State, computed at certain percentages upon the gross receipts from such operation, and such taxes are in lieu of all other taxes upon such property of such companies.   The percentages are adjusted so that this tax shall equal the average burden of taxation on other classes of property, which are subject to local taxation by counties and municipalities, and not by the State.   Double taxation is forbidden.   A telephone company was assessed, and paid, the full percentage of the gross receipts from the property operated by it, part of which was leased from another company.   *Held*, that the leased property was not subject to county and municipal taxes assessed against the lessor. P. 400.

6. Construction of a state constitution and statutes which may create serious questions under the Federal Constitution, is to be avoided if possible.   P. 403.

13 F. (2d) 817, affirmed.

CERTIORARI, 273 U. S. 685, to a decree of the Circuit Court of Appeals reversing a decree of the District Court and directing an injunction in a suit brought by the Telephone Company to enjoin the County of Los Angeles and certain of its officers from seizing and selling some 308,200 telephone " talking sets " in satisfaction of a local tax. The District Court had dismissed the bill for lack of jurisdiction.

*Messrs. Everett W. Mattoon* and *W. Sumner Holbrook, Jr.,* for petitioners.

A substantial federal question is alleged only when it appears that some right of plaintiff, upon which his recovery depends, will be defeated by one construction of the Federal Constitution or statute and will be sustained upon the opposite. *Starin* v. *New York,* 115 U. S. 248; *Wagner Electric Co.* v. *Lyndon,* 262 U. S. 226; *Matters* v. *Ryan,* 249 U. S. 375; *Devine* v. *Los Angeles,* 202 U. S. 313; *Bankers Casualty Co.* v. *Minn. St. P. etc., Ry.,* 192 U. S. 371; *New Orleans* v. *Benjamin,* 153 U. S. 411.

Inasmuch as the Fourteenth Amendment does not make questions of state law a constitutional right, allegations in the bill as to the validity of the tax under the State Constitution, are immaterial in so far as a federal question and jurisdiction are concerned, if the tax itself complies with the universal test of the Fourteenth Amendment.

The bill fails to allege a substantial ground of invalidity under the Fourteenth Amendment, since a double tax on the " talking sets," and consequent discrimination against property leased to public utilities, does not constitute a violation of either the Due Process Clause or the Equal Protection Clause of the Amendment. Double taxation does not of itself constitute a violation of the Fourteenth Amendment. *Swiss Oil Corp.* v. *Shanks,* 273 U. S. 407; *Shaffer* v. *Carter,* 252 U. S. 37; *Cream of Wheat Co.* v.

*Grand Forks,* 253 U. S. 325; *Citizens Nat'l Bank* v. *Durr,* 257 U. S. 99; *St. Louis, etc., Ry.* v. *Arkansas,* 235 U. S. 350; *Tennessee* v. *Whitworth,* 117 U. S. 129; *Fidelity & Col. Tr. Co.* v. *Louisville,* 245 U. S. 54; *Kidd* v. *Alabama,* 188 U. S. 730; *Coe* v. *Errol,* 116 U. S. 517.

A system of taxation discriminating between property leased to an operating public utility and that owned and operated by the public utility is not so arbitrary as to be in violation of the Fourteenth Amendment. *Citizens Telephone Co.* v. *Fuller,* 229 U. S. 322; *Watson* v. *Comptroller,* 254 U. S. 122; *District of Columbia* v. *Brooke,* 214 U. S. 138; *Middleton* v. *Texas Power Co.,* 249 U. S. 152; *Stebbins* v. *Riley,* 268 U. S. 137; *National Paper Co.* v. *Bowers,* 266 U. S. 373; *Heisler* v. *Thomas Colliery Co.,* 260 U. S. 245; *Maxwell* v. *Bugbee,* 250 U. S. 525; *Northwestern Mut. Ins. Co.* v. *Wisconsin,* 247 U. S. 132; *Kidd* v. *Alabama,* 188 U. S. 730.

*Mr. Alfred Sutro,* with whom *Messrs. Oscar Lawler* and *Eugene M. Prince* were on the brief, for respondents.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Petitioners are Los Angeles County, and its tax officials—assessor, deputy assessor, collector, and auditor.

Respondents are incorporated under the laws of California and in that State operate telephone systems for the transmission of local and long distance messages. For the use of patrons in Los Angeles County, they supply and maintain more than 300,000 telephone instruments. The component parts of these instruments are the receiver, transmitter and induction coil, known as the "talking set"; metal (desk) stand or wooden cabinet (for attachment to wall) which support, connect or house the talking devices; and necessary wire connections.

Talking sets are essential to the operation of any telephone system. Those associated with instruments sup-

plied by respondents are leased by them from the American Telephone & Telegraph Company, a New York corporation, which holds title thereto. The remaining parts of these instruments—stands, cabinets, etc.—and perhaps all other operating property in the systems—poles, wires, conduits, etc.—are owned by respondents.

As the statute directs, respondents made regular reports to the State Board of Equalization showing their operative property (including telephone instruments) and their gross receipts from every source. They paid to the State in lieu of taxes, or were ready to pay when due, the prescribed portions of these receipts. Without making formal objection to the inclusion in such reports of telephone instruments as operating property, the petitioning tax officers, purporting to act for the county and sixteen municipalities therein, for local purposes, assessed against the American Telephone & Telegraph Company, as owner, the value of all talking sets within that County (more than 300,000) and demanded payment of taxes thereon for 1925 at the rate borne by ordinary tangible personalty. This was not complied with and they threatened to disconnect the sets, and sell them, and thereby disrupt the systems.

Thereupon, July 17, 1925, respondents filed the original bill—afterwards amended—in the United States District Court, Southern District of California. They set forth the above stated facts, referred to the constitution and statutes of California and said no tax properly could be laid upon the leased speaking sets since all possible claim against them had been discharged through due payment to the State of the prescribed portion of gross receipts, partly derived therefrom. They alleged that these sets were not subject to local taxation; to disconnect them from respondents' systems would do irreparable harm; to enforce the demand for local taxes would violate rights guaranteed by the Fourteenth Amendment; there was no adequate

remedy at law through payment and suit to recover, or otherwise. And they asked for an injunction restraining the threatened wrong.

It appeared that for the fiscal year 1924–1925 respondent telephone companies paid to the State, out of their gross receipts, $2,080,005.72; and for the year ending June 30, 1926, would pay $2,340,075.12.

The cause was submitted "upon defendants' motion to dismiss and, in the event that said motion should be denied. then, without further hearing, for final determination upon the application for a permanent injunction as prayed in their complaint."

The District Court dismissed the bill, February 3, 1926, for want of jurisdiction. The Circuit Court of Appeals concluded correctly, we think, that there was jurisdiction; the California statutes afforded no certain adequate remedy through payment of the demanded taxes followed by suit at law to recover; the talking sets were not subject to local taxation, having been wholly relieved by payment of the gross receipts tax to the State. It accordingly reversed the decree of the trial court and directed an injunction as prayed.

Section 14, Article XIII, Constitution of California provides—

"Taxes levied, assessed and collected as hereinafter provided upon railroads, . . . ; telegraph companies; telephone companies; . . . shall be entirely and exclusively for State purposes, and shall be levied, assessed and collected in the manner hereinafter provided. . . .

"(a) . . . all telegraph and telephone companies; and all companies engaged in the transmission or sale of gas or electricity shall annually pay to the State a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way, and other property, or any part thereof used exclusively in the operation of their business in this State, computed as fol-

lows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies, and each thereof within this State.  . . . .

"The percentages above mentioned shall be as follows: . . . . on all telegraph and telephone companies, three and one-half per cent.; [by later Legislative action increased to 5½%]. Such taxes shall be in lieu of all other taxes and licenses, State, county and municipal, upon the property above enumerated of such companies except as otherwise in this section provided; . . . ."

Pertinent provisions of the Political Code are in the margin.*

Considering what this Court said in *Raymond, Treasurer,* v. *Chicago Traction Co.,* 207 U. S. 20; *Home Telephone Company* v. *County of Los Angeles,* 227 U. S. 278,

---

* California Political Code

Sec. 3664a. 1. All railroad companies, . . . ; all telegraph and telephone companies; . . . shall annually pay to the state a tax upon their franchises, roadways, roadbeds, rails, rolling stock, poles, wires, pipes, canals, conduits, rights of way, and other property, or any part thereof, used exclusively in the operation of their business in this state, computed as follows: Said tax shall be equal to the percentages hereinafter fixed upon the gross receipts from operation of such companies and each thereof within this state.

4. Such taxes shall be in lieu of all other taxes and licenses, state, county, and municipal, upon the property above enumerated of such companies except as otherwise provided in section fourteen of article thirteen of the constitution of this state.

Sec. 3665a. 1. The term "gross receipts from operation" as used in section three thousand six hundred sixty-four *a* of this code is hereby defined to include all sums received from business done within this state, during the year ending the thirty-first day of December last preceding, including the company's proportion of gross receipts from any and all sources on account of business done by it within this state, in connection with other companies described in said section.

Sec. 3665b. The term "operative property" as used in any section of this code shall include:

(d) In the case of telegraph and telephone companies doing business in this state: The franchises, rights of way, poles, wires, pipes,

and *Binderup* v. *Pathe Exchange,* 263 U. S. 291, we must conclude that the bill set forth claims of right under the Federal Constitution sufficiently substantial to give the trial court jurisdiction of the cause. As it acquired jurisdiction, all material questions were open for decision. *Greene, Auditor,* v. *Louisville, etc. Co.,* 244 U. S. 499.

Petitioners maintain that under §§ 3804 and 3819, California Political Code, respondents could have protected their rights by paying the assessed tax and bringing actions to recover. But whether either of these sections applies in circumstances like those here presented is far from certain. Section 3819 gives a remedy to the *owner;* and *Warren* v. *San Francisco,* 150 Cal. 167, intimates quite strongly that it applies only to actual owners. Whether the lessee who has paid taxes upon the owners' property can recover under § 3804 is also questionable. Counsel differ widely concerning the meaning of these sections and no opinion of the State court removes the doubt. In no permitted proceeding at law could in-

conduits, cables, switchboards, telegraph and telephone instruments, batteries, generators, and other electrical appliances, and exchange and other buildings used in the telegraph and telephone business and so much of the land on which said buildings are situate as may be required for the convenient use and occupation of said buildings.

Sec. 3666. 1. If any assessor finds in the report of the operative property in his county, city and county, municipality, or district, furnished to him by any of the companies as required in section three thousand six hundred sixty-five *c* of this code, any piece or parcel of property which he regards as nonoperative property, or partially operative and partially nonoperative, he shall, within thirty days after receiving such report, notify the state board of equalization thereof by mail, which notice shall contain a general description of the property and the assessor's reasons for regarding the same as nonoperative property. [The Board must pass upon the contest.] . . . Said decision shall be binding upon all parties, the state, the county, city and county, municipality, or district, and the company unless set aside by a court of competent jurisdiction, and each such assessor must note the *decision* on his assessment-roll, and must assess such property accordingly.

terest upon payments be recovered for the time necessary to obtain judgments. The County and sixteen municipalities were interested in the taxes demanded and if petitioners had received payments, it would have been incumbent upon them to make prompt distribution. Considering all the circumstances, we find no clear, adequate remedy at law. The equity proceeding was permissible.

Unquestionably the talking sets would have been free from local assessments if the title had been in respondents; but petitioners stoutly maintain that the gross receipts tax prescribed by the Constitution is not in lieu of local taxes upon *leased* property.

No ruling of the California Supreme Court authoritatively determines whether personal property leased by a telephone company and actually used for operating purposes is relieved from local taxation by payment to the State of the prescribed percentage of the lessee's gross receipts. July 2, 1927,—after the decision below—that court handed down an opinion which declared leased improved real estate, although actually used as operating property, was subject to local taxation. *Pacific Telephone & Telegraph Co.* v. *State Board of Equalization,* 74 Cal. Dec. 96. But rehearing was granted and this vacated " the previous opinion and judgment and set the whole matter at large." *Miller & Lux Incorporated* v. *James,* 180 Cal. 38, 48.

The argument against exemption of leased property from local taxation rests chiefly upon literal and narrow interpretation of words in § 14, Article XIII, California Constitution—". . . all telegraph and telephone companies . . . shall annually pay to the State a tax upon *their* franchises, . . . , poles, wires, pipes, canals, conduits, rights of way, and other property . . . used exclusively in the operation of their business "; and " such taxes shall be in lieu of all other taxes and licenses,

State, county and municipal, upon the *property* above enumerated *of such* companies."

But the Constitution plainly directs, " taxes levied, assessed and collected as hereinafter provided upon . . . telephone companies . . . shall be entirely and exclusively for State purposes " and such companies " shall annually pay to the State a tax upon their poles, . . . and other property, or any part thereof, used exclusively in the operation of their business." And the Political Code provides [Sec. 3664] that " taxes levied, assessed and collected as hereinafter provided upon telephone companies shall be entirely and exclusively for State purposes and shall be assessed and levied by the State Board of Equalization "; [Sec. 3664a] that " all . . . telegraph and telephone companies . . . shall annually pay to the State a tax upon their . . . poles, wires, . . . and any other property, or any part thereof, used exclusively in the operation of their business . . .; " [Sec. 3664a-4] " such taxes shall be in lieu of all other taxes and licenses, state, county, and municipal, upon the property above enumerated of such companies except . . .; " [Sec. 3665a] " the term ' gross receipts from operation ' as used in Sec. 3664a of this Code is hereby defined to include all sums received from business done within this State; " [Sec. 3666] if an assessor finds reported as operative property in his county any which he regards as nonoperative, he shall notify the Board of Equalization within thirty days; and [Sec. 3607] " nothing in this Code shall be construed to require or permit double taxation."

Sec. 14, Article XIII, (adopted 1910) was proposed by a Commission which gave the matter much consideration and made an elaborate report. It is the result of an earnest effort to provide for enforcement of adequate contributions from public service and some other corporations while avoiding double and unjust taxation. Payment of

83583°—28——26

specified percentages (subject to change by the Legisla-·ture) of gross receipts was directed upon the theory that ·the value of operative property could be fairly measured by considering receipts therefrom. Also, that by paying to the State a portion of these, the corporation would, in effect, contribute for its operative property the substantial equivalent of all taxes laid upon other property. The Commission (Rep. 1910, p. 19.) said—" In explanation of the above rates it may be stated that they are fixed on the theory that these proportions of the gross receipts will in each ·case equal the average burden of taxation on other classes of property. The method of arriving at the different rates is explained in detail in the 1906 report of this commission."

The Supreme Court of the State has declared the gross receipts tax is essentially one on property, *Pullman Company* v. *Richardson,* 185 Cal. 484, 487; and it apparently approves the view that " a fair tax upon gross earnings bore such a relation to the values of these properties under their unity of use as to justify such a tax upon revenue as being a legal and commutated or substituted tax for other taxes which were or might have been levied." *Pacific Gas & Electric Co.* v. *Roberts,* 168 Cal. 420, 425. See *Southern Pacific Co.* v. *Levee District No. 1,* 172 Cal. 345; *Great Western Power Co.* v. *City of Oakland,* 189 Cal. 649.

The State received from respondents a sum equal to five and one-half per centum of the gross revenues derived from all operative property under their control—leased as well as owned. These did not depend upon ownership; and rent paid out was not considered.

If payment of the prescribed part of the gross receipts only relieves from local taxation property actually owned and leaves all held under lease subject thereto, inequalities with possible confiscation, would certainly result. Under that theory a corporation with title to half (in value) of its operative property, the remainder being leased, would

really pay on account of the portion owned at twice the rate required of another corporation operating the same amount of property and having equal receipts, but holding nothing by lease. And if the ratio between property owned and leased were less, the difference in rate would be still greater. A telephone company which leased everything it used would release no property from taxation by paying the gross receipts tax, while a competitor with equal receipts, by paying the same amount, might absolve from local assessments property of very large value.

These difficulties can not be avoided by saying the lessee will not pay assessments against the lessor and therefore can not complain. Leases are commonly made with reference to taxation. When the lessor discharges the tax the lessee pays rent accordingly. And the Fourteenth Amendment protects those within the same class against unequal taxation; all are entitled to like treatment.

Here respondents have surrendered out of gross receipts the equivalent of the burden imposed upon other property not less valuable than all the operating property in their systems; and now, unless more is paid, disruption is threatened through seizure and sale of essential instrumentalities actually employed to produce those receipts.

We think the purpose of the 1910 Amendment is to tax all operating property of a telephone company by ascertaining the gross receipts and taking therefrom the specified percentage. Thus, the imposition becomes approximately equal to what other property bears. Unless the gross receipts tax be so treated, some very serious questions under the Federal Constitution are almost certain to arise. Without an authoritative holding by the State Supreme Court to the contrary, we must conclude the leased speaking sets are not subject to local taxation.

*Affirmed.*

MR. JUSTICE STONE took no part in the consideration or decision of this case.