PLAZA PROVISION COMPANY, INC., Plaintiff and Appellee, *v.* JESÚS BENÍTEZ CASTAÑO, CITY MANAGER, ETC., ET AL., Defendants and Appellants.

No. 7340. Argued April 28, 1937.—Decided May 28, 1937.

*J. Valldejuli Rodríguez* for appellants. *James R. Beverley, R. Castro Fernández, Ryder Patton,* and *José López Baralt* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The Board of Commissioners of the Capital of Puerto Rico published on June 6, 1935, to become effective on July 1 of the same year, Ordinance No. 252, section 6 of which provides as follows:

"Inspection of Meats from Animals Slaughtered Outside of San Juan—Any person engaged in selling in the Capital of Puerto Rico fresh or refrigerated meat from animals slaughtered outside the limits of the Government of the Capital shall be bound to submit said meat to a daily inspection by representatives (*delegados*) of the City Manager, and for said inspection he will pay a fee of 5 cents for each twenty-five pounds (*arroba*) of meat admitted for sale, whether it be fresh or refrigerated meat."

Section 8 of the same ordinance provides that the inspection fees imposed by section 6, *supra,* shall be collected by the Treasurer of the Capital and deposited with the current funds of the Government of the Capital for the ordinary expenses of the same.

Among the business in which the petitioner is engaged, is that of importing from the United States and selling in Puerto Rico refrigerated meat, slaughtered and prepared outside of the Island under the inspection and permission of the Federal Government.

In the petition it was alleged that from July 1 to December 31, 1935, the petitioner imported several shipments of refrigerated meat, which were sold in the usual course of its business; that the agents of the Government of the Capital visited regularly during that time the establishment of the petitioner and demanded payment of the excises on those

shipments of meat, the petitioner refusing to pay the same; that the agents never inspected the meat, nor tried to make any inspection; that on April 6, 1936, the defendant treasurer requested the petitioner to pay the sum of $306.30 as excise tax on the shipments of meat imported from July 1 to December 31, 1935, with a warning that if said sum was not paid within 10 days he would attach and sell at public auction property of the petitioner in order to collect the said sum, in accordance with the provisions of Act No. 63 of May 13, 1934 (Session Laws, p. 446).

The petitioner prayed for the issuance of a permanent injunction restraining the defendants from the performance of any act tending to the collection of the excise tax; and furthermore, that an injunction *pendente lite* be issued to prevent the commission of such acts. In support of its petition, it alleged the following grounds:

1. That Ordinance No. 252 is illegal and void, and that it violates the rights guaranteed to the petitioner by the Federal Constitution, the Organic Act, and the laws of Puerto Rico:

(*a*) Because Joint Resolution No. 66 of May 12, 1931, prohibits the imposition of such excise taxes on the meat from animals slaughtered in Puerto Rico; and its imposition on meat imported from the United States violates section 3 of the Organic Act, which prohibits the imposition of discriminatory taxes on goods imported from the United States.

(*b* and *c*) Because section 6 of the ordinance denies to the petitioner the equal protection of the laws; it violates the rule of uniformity in taxation in not imposing equal excise taxes on meat from animals slaughtered within the Capital, in violation of section 2 of the Organic Act; it constitutes a discrimination prohibited by section 3 of said Organic Act; and it seeks to regulate and encumber the commerce between United States and Puerto Rico, which is an exclusive power of the National Congress.

(*d*) Because the provisions of the ordinance are in conflict with the Federal statute entitled Federal Meat Inspection Act, approved March 4, 1907 (21 U.S.C.A. 71–91).

(*e*) Because the Capital of Puerto Rico lacks power or authority to impose inspection fees, as distinguished from excise taxes for obtaining revenue.

(*f*) Because the said excise tax constitutes, in effect, a double taxation for the reason that the Capital imposes and collects a license fee for the sale of meat in accordance with Act No. 99 of May 15, 1931, which has been paid by the petitioner.

(*g*) Because the imposition of said excise tax violates section 99 of the Internal Revenue Act of Puerto Rico, which provides that the municipalities may not levy or collect any excise or local tax on any article subject to taxation or exempted from taxation by said act; and similarly section 83 of the same act, which provides that food stuffs shall be exempted from internal revenue taxes.

(*h*) Because Act No. 63 of April 28, 1931, and the Regulations for its application issued by the Insular Board of Health; Act No. 81 of March 14, 1912, as amended by Act No. 25 of 1914; and the Act of March 14, 1907, prohibit and forbid similar legislation by the Capital in relation to meat inspection.

2. That the petitioner has no adequate remedy at law; and that if the attachment and sale of property of the petitioner is permitted, petitioner would be deprived of its property without due process of law, would suffer irreparable damage, and would be exposed to a multiplicity of suits in order to enforce its rights.

3. That the payment under protest of the excise taxes does not constitute an adequate, speedy, and effective remedy, for the following reasons:

(1) Because the act which provides for payment under protest (Act No. 99 of 1931, as amended by Act No. 32 of 1933) does not provide for the payment of interest on the sums improperly collected when its reimbursement is ordered.

(2) Because said act only grants to the taxpayer a preferential right and not an absolute right to the immediate reimbursement of the sum paid under protest.

(3) Because the remedy of payment under protest would compel the petitioner to bring a multiplicity of suits.

(4) Because the law does not provide that the excise taxes paid under protest be deposited in a trust fund, but on the contrary permits that they be used for the current expenses of the municipality, thus making uncertain the prompt reimbursement of the excise taxes held to be illegal.

(5) Because in accordance with the law which authorizes the payment under protest, the reimbursement of the excise taxes could not be ordered by means of a writ of mandamus.

4. Because the financial condition of the Government of the Capital is so embarrassed, that it amounts to a state of insolvency, as

said Government is in no condition to pay and actually is not paying its current accounts at maturity, for which reason the petitioner would not be able to recover the excise taxes which said Government is seeking to collect.

Having been summoned to show cause why the injunction sought should not be decreed, the defendants appeared, demurred, and moved to quash the restraining order and to dismiss the petition on the following grounds:

1. Lack of jurisdiction to issue the restraining order, because it is sought thereby to prevent the collection of an excise tax imposed by an ordinance and the petitioner has an adequate, clear, and effective remedy at law, that is, the payment under protest, authorized by Act 99 of 1931, as amended by Act 32 of May 4, 1933, and by Act 63 of May 13, 1934. Said laws expressly forbid the use and issuance of extraordinary writs to prevent the collection of excise taxes.

2. Lack of facts sufficient in the petition to constitute a cause of relief.

3. That the mere allegation that the ordinance is unconstitutional is insufficient to support the remedy by injunction.

The district court, after hearing the parties, issued the writ of preliminary injunction sought. Thereupon the defendants appealed, and in their brief they assign as error the issuance of the writ, claiming that it renders ineffective Act No. 99 of 1931 and its amendments, and is in conflict with the decision of this Supreme Court in the case of *The Texas Co. (P. R.) Inc.* v. *Board of Commissioners*, 49 P.R.R. 911.

The only question brought before us by the present appeal is whether the facts alleged in the petition and admitted by the demurrer are sufficient to justify the intervention of the district court by means of ·a writ of injunction *pendente lite*.

█ We agree with the appellant in that the mere allegation that an act or ordinance : is unconstitutional is not by itself sufficient to justify a court of equity in preventing its execution by means of a writ of injunction. There must exist other reasons and grounds to warrant said intervention, such

as the lack of an adequate legal remedy, the suffering of irreparable damage by the plaintiff or a multiplicity of suits, should the issuance of the writ be denied.

In the case at bar it has been specifically alleged by the petitioner that it has no other adequate legal remedy for the protection of its interests against the acts which the defendants intend to do to collect the excise tax.

In the case of *The Texas Co. (P. R.) Inc.* v. *Board of Commissioners, supra,* invoked by the appellants, the petitioning corporation applied for a writ of certiorari directed to the Board of Commissioners of San Juan and prayed for a judgment declaring that a certain ordinance approved by said board was illegal and void. It was alleged in the petition that the petitioner had no adequate legal remedy, but. the court was not asked to exercise its extraordinary powers. as a court of equity, to prevent, by means of a writ of injunction, the commission of the acts which the defendant intended to commit under the provisions of the ordinance, the validity of which was attacked. The district court refused to issue the writ of certiorari, and upon the case being taken on appeal to this Supreme Court, we held that the lower court had acted properly in refusing to issue the writ of certiorari, which is an extraordinary remedy originating in the English common law, first, because in accordance with section 32 *a* of Act No. 99 of 1931, the issuance of such writs is not proper where the purpose thereof is to prevent or hinder the collection of excise taxes; and second, because the petitioner had an adequate legal remedy, which was the one provided by "An Act Relative to Judgments and Declaratory Decrees" (Session Laws of 1931, p. 378), and within which it could obtain a judgment declaring its rights as effectively as the one that could be entered in the certiorari proceeding. In said case, the question of whether or not the petitioner had a right to the issuance of a writ of injunction, was not discussed or decided.

642

■ In the case at bar the equity jurisdiction has been expressly invoked, alleging, among other grounds, that the legal remedy of payment under protest was inadequate.

Section 32 *a,* which was added to Act No. 99 of 1931 by Act No. 32 of May 4, 1933 (Session Laws, p. 254), provides:

''Section 32 *a.*—In every case where the treasurer or any of his subalterns in charge of the collection of the local rentals, taxes, or excises owing to the Government of the Capital, begins any proceedings or takes any steps for the collection of such local rentals, taxes, or excises owing to the Government of the Capital, under the allegation or claim made by said official or by his employees, that any person is indebted to it, the party against whom the proceedings or steps are directed, if he believes that the collection is illegal or unjust, or that it is made contrary to the provisions of the Organic Act, of insular laws, or of ordinances of the Capital, shall pay said local rentals, taxes, or excises under protest. After such payment has been made under protest, the treasurer or the collector shall cover the amount collected into the treasury of the Capital, with the statement that said amount was paid under protest. The party paying such local rental, tax, or excise under protest may, at any time within the unextendable term of thirty days after the payment is made, sue the said treasurer in a court of competent jurisdiction for the return of the said sum; and if, taking into account the merits of the case, it is decided that the amount was unjustly or illegally collected, the court taking cognizance of the matter may certify, in accordance with its records, that the said local rentals, taxes, or excises were paid without reason therefor, and must be returned, preference being given to this payment over any other claim made on the Government of the Capital. There shall be no other recourse in the case of illegal collection of local rentals, taxes, or excises of the Capital, or in the case of attempted collection of such local rentals, taxes, or excises. In no case shall any writ be issued to prevent the collection of such local rentals, taxes, or excises due, or to hinder or delay such collection; . . .''

It will be noted that the transcribed statute contains no provision in relation to the payment of interest on the sum to be reimbursed to the petitioner, should the ordinance be declared void, and does not insure or guarantee at all the

reimbursement of the sum stated in the judgment. We shall examine the decisions rendered by the courts on this question.

In *Procter & Gamble Distributing Co.* v. *Sherman*, 2 F. (2d) 165, an injunction was requested to prevent the collection of taxes unlawfully imposed. The defendant objected alleging that the petitioner had an adequate legal remedy: that of payment under protest, granted by section 218 of the New York Tax Law. The court in holding that payment under protest was not an adequate legal remedy, expressed itself as follows:

"But, quite independently of such doubts, the relief is inadequate because of the express refusal to allow interest. It is no answer to say that interest is not allowed against the sovereign. (Citations.) The adequacy of the requisite legal remedy cannot be measured by the remedies one has against a person who is exempt from all process. If that were the test, the principal itself might be confiscated. While I have been referred to no decision on the point, it seems to me plain that it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all. Whatever may have been our archaic notions about interest, in modern financial communities a dollar to-day is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value. The present use of my money is itself a thing of value, and, if I get no compensation for its loss, my remedy does not altogether right my wrong."

The same legal question was decided in the same manner by the Circuit Court of Appeals in the case of *Southern California Telephone Co.* v. *Hopkins*, 13 F. (2d) 814, a decision which was affirmed by the Federal Supreme Court (275 U. S. 399), holding, in accordance with the doctrine of *Procter & Gamble, etc.* v. *Sherman, supra,* that where the legal remedy granted by the state laws to taxpayers who are forced to pay under protest an illegal tax, does not provide for the payment of interest on the sum paid, when refund is decreed, the legal remedy is not adequate and the taxpayer

may resort to equity for protection against wrongful exactions.

In accordance with the above-cited decisions, we must hold that the remedy of payment under protest authorized by section 32 (a) of Act No. 99 of 1931, *supra,* is not an adequate and effective legal remedy for the protection of taxpayers.

The averments in the petition present a case which *prima facie* justifies the intervention of a court of equity. The lower court did not err in overruling the demurrer for insufficiency and in decreeing the injunction *pendente lite.*

The order appealed from must be affirmed.

Mr. Justice Wolf concurs in the judgment, on the grounds set forth in the opinion and perhaps on other grounds.

Mr. Justice Córdova Dávila took no part in the decision of this case.