BUNTE CANDIES, INC., an Oklahoma Corporation; Chromalloy American Corporation, a Delaware Corporation; Duncan Manufacturing Company, an Oklahoma Corporation; Fife Corporation, an Oklahoma Corporation; the Firestone Tire & Rubber Company d/b/a Dayton Tire & Rubber Company, a Delaware Corporation; General Motors Corporation, a Delaware Corporation; George E. Failing Company, a division of Azcon Corporation, a Maine Corporation; the Hertz Corporation, a Delaware Corporation; Kellwood Company, a Delaware Corporation; Little Giant Pump Company, an Oklahoma Corporation; Lyntone Belts, Inc., an Oklahoma Corporation; Perfection Equipment Company, an Oklahoma Corporation; Philips Industries, Inc., an Ohio Corporation; Scrivner, Inc., an Oklahoma Corporation; Sentry Manufacturing Company, an Oklahoma Corporation; and Southwest Electric Co., an Oklahoma Corporation; individually and as representatives of all others similarly situated, Plaintiffs,

v.

Jan Eric CARTWRIGHT, Attorney General of the State of Oklahoma and George Keyes, County Assessor of Oklahoma County, Oklahoma, individually and as representative of all others similarly situated, Defendants.

No. CIV–80–929–W.

United States District Court,
W. D. Oklahoma.

Feb. 11, 1981.

James D. Fellers and John Joseph Snider of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl., for plaintiffs.

Manville T. Buford, Asst. Atty. Gen., Chief, Civ. Div., and John F. Percival, Asst. Atty. Gen., Oklahoma City, Okl., for defendant Jan Eric Cartwright.

George W. Paull, Jr., Asst. Dist. Atty., Oklahoma City, Okl., for defendant George C. Keyes.

## MEMORANDUM OPINION AND ORDER

LEE R. WEST, District Judge.

Plaintiffs bring this action praying for declaratory and injunctive relief against the defendants. The plaintiffs allege that the acts of the defendants have violated rights of the plaintiffs which are secured under Article I, Section 10, of the U.S. Constitution and the Fifth and Fourteenth Amendments to the U.S. Constitution. The case is now before the Court upon the defendants' Motion to Dismiss. The defendants seek dismissal for the reasons that this Court is without subject matter jurisdiction under the provisions of the Eleventh Amendment to the U.S. Constitution and 28 U.S.C. § 1341, and, in the alternative, that this Court should abstain in favor of proceedings in the state courts of Oklahoma. The Court has considered the several briefs submitted by the parties and makes the following determination.

The plaintiffs are manufacturers and companies engaged in business in the state of Oklahoma. They have each entered into contractual relations with various public trust authorities organized under the laws of the state of Oklahoma. Within these contractual relationships, the plaintiffs

have qualified for certain limited ad valorem tax exemptions as provided for by the state legislature under the provisions of 60 O.S. § 176 et seq. On July 31, 1979, the defendant Jan Eric Cartwright, Attorney General of the State of Oklahoma, issued Opinion No. 79–168 in which he determined that 60 O.S.Supp. § 178.7 was void and thereby terminated the limited ad valorem tax exemptions. Codefendant George Keyes is charged with the duty of assessing and collecting ad valorem taxes in Oklahoma County. Pursuant to Opinion No. 79–168, he and other county assessors in the state must assess and collect ad valorem taxes against the plaintiffs and other similarly situated business entities in the state.

In consequence, the plaintiffs have brought this action in federal court alleging a violation of constitutionally guaranteed rights. Specifically, the plaintiffs allege that the opinion of the Attorney General has the force and effect of law in the state of Oklahoma unless it is reversed by a court of competent jurisdiction, and that the action of the defendant Attorney General violates the constitutional prohibition that "no state shall pass any law impairing the obligation of contracts". Opinion No. 79–168 is alleged to still be in force and effect and pursuant thereto, the various county assessors have begun assessment of ad valorem taxes on properties which had previously been entitled to the limited tax exemption. Additionally, the plaintiffs allege that Opinion No. 79–168 constitutes a denial of the constitutional guarantee against deprivation of property by the states without due process of law as incorporated into the Fourteenth Amendment from the Fifth Amendment to the U.S. Constitution.

The plaintiffs have requested that this case be given class action status and that the classes be certified for those business entities similarly situated with the named plaintiffs and for those county assessors similarly situated with the defendant George Keyes. The plaintiffs seek as relief a declaration that Opinion No. 79–168 is unconstitutional and an order enjoining the defendants from implementing the same.

The Court is not required to make a decision on the merits at this juncture. Rather, the defendants have advanced substantial arguments in negation of this Court's subject matter jurisdiction to make a decision on the merits. Further, the defendants have argued that if this Court does have proper jurisdiction that it should abstain in favor of proceedings in state court. The proper abstention would be based on either of several theories of federal court abstention, i. e., the Pullman doctrine (presence of outcome-determinative issues of state law), the Burford doctrine (avoidance of needless conflict with state administration of local affairs), abstention because of unresolved issues of state law, and abstention upon basic principles of federalism and comity. This Court shall first address the most straightforward question raised by the motion to dismiss, that is, whether 28 U.S.C. § 1341 denies this Court of any subject matter jurisdiction that it might otherwise have over this action.

Title 28, U.S.C. § 1341 (1970), also known as the Tax Injunction Act of 1937, is a brief statute which provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.

The denial of jurisdiction in this section is quite complete. The only inherent exception to application of its jurisdictional bar is that a state must offer an adequate or plain, speedy and efficient remedy in the state court. The section applies regardless of whether the complaint involves a federal question alone or in conjunction with state claims. The only concern is whether or not there is an adequate state court remedy for the federal claims. *28 East Jackson Enterprises, Inc. v. Cullerton*, 551 F.2d 1093, 1096 (7th Cir.), *cert. denied*, 434 U.S. 835, 98 S.Ct. 123, 54 L.Ed.2d 96 (1977).[1]

---

1. The only recognized exception to the general bar of § 1341 is for those suits brought by the

United States to protect itself and its instrumentalities from unconstitutional state exac-

The Tax Injunction Act of 1937 was purposed to codify prior judicial practice. Consequently, court opinions interpreting the prior judicial practice or policy are useful in determining the Act's proper application. *United Gas Pipe Line Co. v. Whitman*, 595 F.2d 323, 325 (5th Cir. 1979). The Tax Injunction Act reflects the same nonintervention principle stated by the United States Supreme Court in *Matthews v. Rodgers*, 284 U.S. 521, 525–26, 52 S.Ct. 217, 219, 76 L.Ed. 447 (1932):

> The scrupulous regard for the rightful independence of state governments which should at all times actuate the federal courts, and a proper reluctance to interfere by injunction with their fiscal operations, require that such relief should be denied in every case where the asserted federal right may be preserved without it. Whenever the question has been presented, the Court has uniformly held that the mere illegality or unconstitutionality of a state or municipal tax is not in itself ground for equitable relief in the courts of the United States. If the remedy at law is plain, adequate, and complete, the aggrieved party is left to that remedy in the state courts, from which the cause may be brought to this Court for review if any federal question be involved.

This principle was adhered to again by the U.S. Supreme Court in *Great Lakes Co. v. Huffman*, 319 U.S. 293, 298–99, 63 S.Ct. 1070, 1073, 87 L.Ed. 1407 (1943), in considering the Tax Injunction Act of 1937 as it might apply to suits for declaratory judgment rather than injunctive relief. The opinion reads in part:

> Interference with state internal economy and administration is inseparable from assaults in the federal courts on the validity of state taxation, and necessarily attends injunctions, interlocutory or final, restraining collection of state taxes. These are the considerations of moment which have persuaded federal courts of equity to deny relief to the taxpayer—es-

pecially when the state, acting within its constitutional authority, has set up its own adequate procedure for securing to the taxpayer the recovery of an illegally exacted tax.

It may be noted at this point that although the Supreme Court did not definitively pronounce in *Great Lakes v. Huffman* that the Tax Injunction Act would bar suit for declaratory relief to prevent the collection of taxes, subsequent decisional law has made the bar apply to such suits. Justice Brennan explained in a separate opinion in *Perez v. Ledesma*, 401 U.S. 82, 128 n.17, 91 S.Ct. 674, 699 n.17, 27 L.Ed.2d 701 (1971), that the policy considerations of the anti-tax-injunction statute bars all anticipatory federal adjudication which would cast state tax administration into disarray, not merely federal injunctions. *See also, King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976); *Mandel v. Hutchinson*, 494 F.2d 364, 365 n.1 (9th Cir. 1974). The plaintiffs in this case have sought only declaratory and injunctive relief. Therefore, if the jurisdictional bar is found to apply it will deny this Court jurisdiction of the entire action. And the jurisdictional bar will not apply only if this Court finds that a plain, speedy, and efficient remedy cannot be had in the state courts of Oklahoma.

The defendants have offered this synopsis of the remedy available under Oklahoma law for those taxpayers in the posture of the plaintiffs:

> "Any taxpayer whose property tax assessment has been increased, which necessarily includes assessments of previously exempt property, must receive a written notice of assessment and be given an opportunity to contest the assessment before the county board of equalization. 68 O.S.Supp.1978 § 2460. The same statute provides for a hearing before the board at which assessments may be corrected, adjusted or equalized. The taxpayer may appeal from any order of the board to the

---

tions. *Moe v. Salish & Kootenai Tribes*, 425 U.S. 463, 470–475, 96 S.Ct. 1634, 1639–1642, 48 L.Ed.2d 96 (1976) (citations omitted). The

United States is not a party to the instant case and this exception has no application.

district court of his county and there be heard on either or both questions of law or fact in a trial de novo. 68 O.S.1971 § 2461(a). The decision of the district court may be appealed to the state Supreme Court. 68 O.S.1971 § 2461(c). The law provides that should the taxes become due during the pendency of any appeal from the decision of the county board of equalization, the taxes shall be paid and the county treasurer notified to maintain the funds in a separate protest account. 68 O.S.1971 § 2467(a) and (b). Upon a resolution of the appeal favorable to the taxpayer, the protested taxes must be returned. 58 O.S.1971 § 2467(b). Appeals from the determinations of county boards of equalization 'have precedence in the Court to which they are taken'. 68 O.S.1971 § 2468(c).

"By statute, the combined administrative and judicial remedy is exclusive as to most ad valorem tax protests, equitable remedies being a judicial resort only where the aggrieved party 'has no taxable property within the tax district ...' 69 O.S.1971 § 2468(a). State law does provide direct resort to the courts under limited circumstances. Where a tax is allegedly illegal and no appeal is otherwise provided, the taxpayer may pay the tax when due and sue the collecting officer to recover the taxes paid under protest. 68 O.S.1971 § 2469. Suits of this type also are given statutory precedence over other matters on the court's docket. § 2469, *supra*." (Defendant's Brief p. 7–8.)

The Court's reading of the relevant statutes concurs with this synopsis and the plaintiffs have not disputed it. Rather, the plaintiffs contend that this procedure is inadequate for a variety of reasons. The plaintiffs' contentions may be summarized as: (1) that the procedure would spawn a multiplicity of suits in local boards and district courts and other attendant problems causing judicial inefficiency, (2) that the federal class action would offer a mode of resolution superior to the state procedure; and (3) that the state procedure does not allow for payment of interest on taxes held

under protest even if the protest is successful.

██ The least substantial of the plaintiffs' criticisms of the state procedure is the alleged superiority of the federal class action procedure. "For a state remedy to be 'adequate' under 28 U.S.C. § 1341 it need not necessarily be the best remedy available or even equal to or better than the remedy that might be available in the federal courts." *Mandel v. Hutchinson*, 494 F.2d at 367, quoting, *Bland v. McHann*, 463 F.2d 21, 29 (5th Cir. 1972), *cert. denied*, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973). *Miller v. Bauer*, 517 F.2d 27, 32 (7th Cir. 1975). The fact that class action procedures are not available in the state challenge procedure is not a sufficient basis for this Court to find that the state procedure is inadequate under § 1341.

Similarly, the Courts have been almost uniform in rejecting the "multiplicity of suit" argument and others that are related to it. The U.S. Supreme Court rejected multiplicity of suits as grounds for finding a state remedy to be inadequate in *Matthews v. Rodgers*, 284 U.S. at 529–30, 52 S.Ct. at 221. The Supreme Court indicated that the multiplicity of suits argument might be persuasive in a situation involving numerous suits between the same parties involving the same issues of law, but not in those situations where there are numerous parties plaintiff or defendant or involving varying issues of law or fact. Several of the federal appeals courts have found the multiplicity argument to be an insufficient basis for a determination of inadequacy in cases involving state procedures and facts substantially similar to those in the instant case. *See Mandel v. Hutchinson*, 494 F.2d at 367 (9th Cir.); *Miller v. Bauer*, 517 F.2d at 32 (7th Cir.); *Bland v. McHann*, 463 F.2d at 28, n.24 (5th Cir.).

The plaintiffs have made reference to a Third Circuit Court of Appeals decision in support of their argument that the presence of multiple suits in the state remedy would cause it to be inadequate. In that case, *Garrett v. Bamford*, 538 F.2d 63 (3rd Cir.)

*cert. denied*, 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976), the court found the multiplicity of suits argument to be a persuasive basis for finding the Pennsylvania tax challenge remedy to be inadequate for Tax Injunction Act purposes. The plaintiffs in *Garrett v. Bamford*, were a group of non-white taxpayers who brought suit on the grounds that the method of assessing the value of property on which real estate and school taxes were based was intentionally discriminatory and in violation of 42 U.S.C. §§ 1981, 1983 (1970) and the Fourteenth Amendment to the U.S. Constitution. Considering that the plaintiffs in that case were in low-income brackets, the court decided that the cost of multiple individual actions, as opposed to single consolidated action, could effectively bar the plaintiffs from attacking the allegedly discriminatory tax structure. For this and other reasons, the court found the state remedy to be inadequate.

The Third Circuit has subsequently limited the import that may be assigned to *Garrett v. Bamford* through its decision in *Robinson Protective v. City of Philadelphia*, 581 F.2d 371, 376–79 (3rd Cir. 1978). Again faced with several plaintiffs and one defendant and a challenge to a tax statute based on a common question of unconstitutionality, the court found the state remedy to be adequate. Specifically addressing the issue of multiplicity of suits, the court dismissed it as a basis for holding the statutory remedy inadequate by stating:

> The constitutional core of the complaint may be effectively litigated by one company in state court for the future benefit of all [similarly situated plaintiffs]. A decision by the Tax Review Board or the state courts in any single proceeding or suit that [the challenged statute] is invalid will bind the city and accomplish the relief sought by the five central alarm station companies. 581 F.2d at 379.

In sum, the decision in *Robinson Protective* brings the Third Circuit in alignment with the other courts on the question of multiplicity of suits in Tax Injunction Act considerations.

Further, the language from *Robinson Protective* finds perfect application in the instant case. It can be anticipated that the validity of Opinion No. 79–168 could be challenged by any one of the named plaintiffs through the state challenge procedure. If pursued to the Oklahoma Supreme Court, a decision on the validity of Opinion No. 79–168 would be binding on the entire class of county assessors. If at that time the plaintiffs are dissatisfied with the protection of their federal rights in the state courts, they may seek review of the matter in the U.S. Supreme Court. *Matthews v. Rodgers*, 284 U.S. at 525–26, 52 S.Ct. at 219–220.

As a third and final argument, the plaintiffs contend that the state remedy is inadequate because there is no provision for the award of interest on taxes recovered through a successful challenge. In support of the contention that the failure to award interest served to make a state remedy inadequate, the plaintiffs refer to several cases typified by *U. S. v. Livingston*, 179 F.Supp. 9 (E.D.S.C.1959—three judge court), aff'd, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960). The *Livingston* court relied on *Hopkins v. Southern California Telephone Co.*, 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329 (1928), in holding that:

> It is well settled that a right to recover taxes illegally collected is not an adequate remedy if it does not include the right to recover interest at a reasonable rate for the period during which the taxpayer's money is withheld. Even if the existence of the right be merely cast in substantial doubt, the remedy is not plain or adequate.

The certainty evidenced in the *Livingston* opinion has been refuted to a degree by the dicta of the U.S. Supreme Court in *Department of Employment v. U. S.*, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966). The Supreme Court commented that:

> . . . we need not decide whether omission to provide interest on a successful refund application renders the state rem-

edy here an inadequate one within the meaning of § 1341.

The Sixth Circuit Court of Appeals noticed the issue and considered it to be an open question in *Aluminum Co. of America v. Department of the Treasury*, 522 F.2d 1120, 1127 (6th Cir. 1975). In a more exhaustive review of the matter, the Seventh Circuit Court of Appeals reinforced the general *Livingston* rule that payment of interest on a successful tax refund was essential to an adequate remedy under § 1341. *LaSalle National Bank v. Rosewell*, 604 F.2d 530, 534 (7th Cir. 1979), *cert. granted*, 445 U.S. 925, 100 S.Ct. 1310, 63 L.Ed.2d 758 (1980). This holding by the Seventh Circuit Court must be given the caveat that the court did consider the issue to be one without dispositive precedent.

Moreover, the court in *LaSalle National Bank v. Rosewell* did distinguish the facts it encountered from those of other cases wherein interest was considered not to be essential to an adequate state remedy. The state challenge procedure under consideration in *LaSalle National Bank v. Rosewell* required a taxpayer to make payment of the entire tax assessment as a predicate to the right to challenge the tax. The tax challenge procedure was demonstrated to have an average delay period of two years. The plaintiff in *LaSalle National Bank v. Rosewell* had pursued her state remedy in 1974, 1975 and 1976 and did not receive her refunds for successful challenges in those three years until May 1978. The court held that the failure to pay interest under such state remedy caused it to be inadequate. After reaching this conclusion, the court distinguished its facts from those of cases cited by the defendants in support of the proposition that interest was not required for an adequate state remedy. Three distinguishing factors were mentioned: 1) that in some cases interest on successful challenges were actually available, 2) in some cases prepayment of the challenged tax was not required as a predicate to the right to challenge, and 3) in some cases the amount of money that could possibly be collected as interest was very small or inconsequential.

*Id.*, 604 F.2d at 534–35, *citing, Group Assisting Proposal-Ansonia v. City of Ansonia*, 448 F.Supp. 45 (D.Conn.1978); *Abernathy v. Carpenter*, 208 F.Supp. 793 (W.D.Mo.1962), *aff'd*, 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963).

The instant case is distinguishable from *LaSalle National Bank v. Rosewell* on the second basis. Prepayment of the protested tax is not a prerequisite to lodging a challenge. Indeed, the defendants have offered the uncontroverted assertion that the Oklahoma remedy is so structured as to resolve a dispute prior to the date that the ad valorem tax becomes due. (Reply Brief of Defendants, p. 8–9.) In Oklahoma, the assessment rolls and notices are sent out no later than the fourth Monday in April. 68 O.S. § 2471. The taxpayer assessment protests are filed and scheduled for hearing no later than the last of May each year. County Board of Equalization decisions on the protests are rendered no later than the middle of September and tax rolls are certified on October 1st. 68 O.S. § 2472. Appeals in the courts may be filed after the Boards' determinations have been made and *those appeals take precedence over all other cases on all the courts' dockets* (emphasis added). The taxes then become delinquent if not paid by January 1 of the next year. The conclusions that the defendants urge upon the Court are that if the procedure for protest is prudently pursued by a taxpayer there is no likelihood that any taxes will become delinquent before a judicial decision is rendered and that the question of interest is therefore not pertinent to evaluating the Oklahoma state procedure.

The defendants' argument is a convincing one and highlights the distinctions between this case and *LaSalle National Bank v. Rosewell*. The State of Oklahoma does not require prepayment of protested taxes as a prerequisite to utilizing the challenge procedure, and the system is designed to render a decision before the taxes become delinquent. The plaintiffs have offered no evidence that the protest procedure does not

work in the manner in which it is intended to perform.

The plaintiffs have informed the Court that as of the first of this year they have already paid the taxes which are the subject of this lawsuit and that no interest would be available to them if they should prevail on the merits. The plaintiffs chose this route of protest rather than the state remedy which was available to them. If they had pursued the state remedy, a decision on this matter might well have been rendered before the first of this year. The effects of the failure of the plaintiffs to use the remedy offered by the state could never serve as a basis for a decision that the state remedy is inadequate. *Aluminum Co. of Am. v. Dep't of Treas. of Mich.*, 522 F.2d at 1126; *Ford Motor Credit Co. v. Louisiana Tax Commission*, 440 F.2d 675, 677 (5th Cir. 1971).

■ Weighing all the aforementioned considerations along with the absence of a binding precedent on this Court that would require a state remedy to provide for the payment of interest on a tax refund, this Court holds that the failure of the state remedy to provide for the payment of interest on a successful protest and refund of taxes does not render the Oklahoma challenge procedure inadequate. In reaching this decision, this Court is also keenly mindful that "the history of § 1341, from its precursor federal equity practice to its most current judicial construction, evidences that it is meant to be a broad jurisdictional impediment to federal court interference with the administration of state tax systems." *United Gas v. Whitman*, 595 F.2d at 326.

■ In sum, this Court finds that the plaintiffs have a plain, speedy and efficient remedy in the state of Oklahoma through the administrative/judicial protest procedure outlined above. It is not necessary for this Court to consider the propositions concerning the Eleventh Amendment as a possible bar to jurisdiction, the possibility that abstention might have been proper, or the propriety of class certification.

Both parties have sought to favorably construe the decision of the Oklahoma Supreme Court in *State ex rel. Cartwright v. Dunbar*, Okl.Sup.Ct., 618 P.2d 900 (1980). That case was centered on the same opinion letter of the defendant Attorney General which is the focus of this action. It also involved legal and factual issues that were at least substantially similar to those of this case. This Court has chosen not to consider the possible effect of the decision in *Cartwright v. Dunbar* primarily because a decision on the merits was not rendered by this Court. No implications as to the scope or correctness of *Cartwright v. Dunbar* should be taken from this decision.

■ The parties have vigorously contested whether the *Cartwright v. Dunbar* decision resolves the legal issues involved in this case. Our jurisdictional considerations would not be altered even if *Cartwright v. Dunbar* were found to be a dispositive decision on the merits which would render a state court proceeding futile for the plaintiffs. The prospect of failure in the state court system because of a prior decision is not sufficient to render the state remedy inadequate. *Huber Pontiac Inc. v. Wheeler*, 585 F.2d 817, 821 (7th Cir. 1978); *Coon v. Teasdale*, 567 F.2d 820, 822 (8th Cir. 1977). The plaintiffs must still pursue that state court remedy and then seek review from the U.S. Supreme Court after having lost in the state courts.

The only proper effect that the *Cartwright v. Dunbar* decision might have had upon our procedural deliberations would have been to give evidence of the procedural adequacy of the state remedy. The relative swiftness with which the decision was obtained would seem to evidence a speedy remedy. Nevertheless, neither the presence or the absence of the *Cartwright v. Dunbar* decision would alter this Court's outcome in any respect because the decision reached today is based upon an evaluation of the design of the protest procedure which has

not been shown to have any practical infirmity or irregularity.

The defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.