604 F.2d 530
 CA 79-3209 LaSALLE NATIONAL BANK, Trustee under Trust No.
44891, Plaintiff-Appellant,
v.
Edward J. ROSEWELL, Treasurer of Cook County, and Thomas M.
Tully, Assessor of Cook County, Defendants-Appellees.
 No. 78-2594.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 25, 1979.
Decided Aug. 24, 1979.
 
 James L. Fox, Chicago, Ill., for plaintiff-appellant.
 Henry A. Hauser, Asst. State's Atty., Civil Appeals Div., Chicago, Ill., for defendants-appellees.
 Before SWYGERT, Circuit Judge, MOORE, Senior Circuit Judge,* and TONE, Circuit Judge.
 SWYGERT, Circuit Judge.
 
 
 1
 This appeal involves the Federal Tax Injunction Act and its construction with section 1983 of the Civil Rights Act. Plaintiff-appellant LaSalle National Bank[1] brought this civil rights injunction action under 42 U.S.C. § 1983 against Edward J. Rosewell, Treasurer of Cook County and Thomas M. Tully, Assessor of Cook County. The action sought to enjoin the collection of excessive real estate taxes for 1977 allegedly imposed in violation of plaintiff's due process and equal protection rights under the Fourteenth Amendment. The sole issue on appeal is whether federal district court jurisdiction over this action is barred by the Tax Injunction Act of 1937. 28 U.S.C. § 1341. We conclude that jurisdiction is not barred and reverse the judgment of the district court.
 
 
 2
 * Plaintiff is the owner of a twenty-two unit apartment building in the all black, economically depressed community of East Chicago Heights in Cook County, Illinois.[2] On January 1, 1977 this property had a fair cash value of $46,000. According to Illinois statute, the property should have been assessed at 33% Of its fair cash value: approximately $15,000. Nevertheless, the assessor assessed the property at $52,150, more than triple the correct assessment. As a result plaintiff's tax bill was $6,106 rather than $1,775. This bill was over three times the amount plaintiff would have been required to pay if she had been taxed at the correct rate.
 
 
 3
 Plaintiff alleges that the assessor knowingly as official policy or as governmental custom has maintained a system of assessment in Cook County which has produced egregious disparities in the ratio between the assessed valuation and the fair cash value of real property. The complaint further alleges that these over-assessments are greater in frequency and size in older communities in which property is owned and inhabited primarily by members of racial minority groups and the economically disadvantaged.
 
 
 4
 In 1977, as well as in each of the preceding three years (in which plaintiff's property similarly was overassessed), plaintiff sought administrative relief from the Board of Tax Appeals of Cook County. In each of those years, the Board referred plaintiff's complaint to the assessor for recommendation, and in each year the assessor recommended "no change" in the assessment. The Board denied plaintiff's petition for administrative relief each year.
 
 
 5
 Having been denied administrative relief, plaintiff's only remedy at law was to pay the full amount of the tax claimed by the county collector (defendant Rosewell, Treasurer of Cook County) pursuant to the assessor's assessment, and thereafter objecting and suing for refund at the collector's annual Application for Judgment in the Cook County Circuit Court. See Ill.Rev.Stat.1971, ch. 120, §§ 675, 716. According to plaintiff, the customary delay in receiving refunds after a successful prosecution of a tax refund suit is two years. Further, under Illinois law, no interest may be paid to a successful claimant who has secured the refund of real estate taxes paid under protest.
 
 
 6
 Plaintiff pursued her legal remedy in 1974, 1975, and 1976 and ultimately received refunds for the three years in May, 1978. Plaintiff had been required to deposit payments for illegally exacted taxes in the approximate amounts of $4,600 for 1974, $3,650 for 1975, and $3,950 for 1976, for three, two and one years, respectively. At 8% Interest (the average prime rate for the three-year period), plaintiff lost approximately $2,000 because of her inability to use money which ultimately was deemed to be rightfully hers. Plaintiff contends that approximately $4,300 of her 1977 tax bill of $6,106 is an illegal overcharge and that she would be forced to deposit the $4,300, with no possibility of receiving interest on a refund, along with her correct tax payment in order to seek legal redress.
 
 
 7
 Plaintiff has not paid her 1977 taxes. Instead, on September 19, 1978 she filed this action in federal district court to enjoin the county collector from listing, advertising, proceeding to judgment and order of sale, or selling plaintiff's property as payment for any outstanding tax bill in excess of the amount she is legally required to pay. On November 3, 1978 defendants moved to dismiss the complaint on the grounds that it was barred by the Tax Injunction Act. 28 U.S.C. § 1341. The district court agreed with defendants and dismissed plaintiff's complaint on November 30, 1978.[3] This appeal followed.
 
 II
 
 8
 The Tax Injunction Act mandates that federal district courts "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the court of such State." 28 U.S.C. § 1341. This command has been followed consistently. See e. g., Tully v. Griffin, 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227; Huber Pontiac, Inc. v. Whitler, 585 F.2d 817 (7th Cir. 1978). The converse of this proposition, however, is equally true. As the legislative history of the Act clearly indicates, an action for injunctive relief brought in a federal district court "will not be withdrawn from the jurisdiction of the . . . court Except where there is a plain, speedy, and efficient remedy at law or in equity in the courts of the State. . . ." S.Rep.No.1035, 75th Cong., 1st Sess. 2 (1937) (emphasis added).
 
 
 9
 Defendants contend that there are two legal avenues available to plaintiff which offer "plain, speedy and efficient" relief within the judicial system of Illinois. First, defendants argue that the delay in payment and the failure to pay interest on refunds made pursuant to successful suits for tax refunds brought under Ill.Rev.Stat.1977, ch. 120, §§ 675, 716, do not render this statutory remedy (paying the full amount of the tax bill and then suing for refund) inadequate.[4] Our disagreement with this position is developed in Part A of this opinion. Second, defendants suggest that plaintiff can redress any alleged grievances concerning her property tax assessment by filing a civil rights action under 42 U.S.C. § 1983 in state court. The availability of this mode of relief, defendants argue, provides a "plain, speedy and efficient" remedy in the Illinois courts, thereby barring the equitable jurisdiction of the federal courts. Our analysis of this proposition and our conclusion that the availability of a section 1983 action in state court does not bar federal court jurisdiction comprise Part B of this opinion. We conclude that the Tax Injunction Act does not preclude federal jurisdiction over plaintiff's action, and thus the district court had and should have retained jurisdiction over plaintiff's prayer for relief.
 
 A.
 
 10
 Under Illinois law, the only remedy available to a Cook County property taxpayer billed pursuant to an erroneous assessment is to pay the tax in full and then sue in the Cook County Circuit Court for a refund of the erroneously collected portion of the tax payment. A taxpayer who successfully sues and receives a refund is not entitled, according to Illinois law, to interest on the funds which erroneously had been collected by the County. Lakefront Realty Corp. v. Lorenz, 19 Ill.2d 415, 167 N.E.2d 236 (1960). This rule was reiterated by the Illinois Supreme Court in Clarendon Assoc. v. Korzen, 56 Ill.2d 101, 109, 306 N.E.2d 299, 303 (1973):
 
 
 11
 (U)nder the statutory remedy provided by sections 194 and 235 of the Revenue Act of 1939 (Ill.Rev.Stat.1971, ch. 120, pars. 675 and 716) the taxpayer is not entitled to interest on the refund. This court also held in Lakefront that this fact does not render the remedy at law inadequate so as to justify equity in assuming jurisdiction. We see no reason to depart from that decision.
 
 
 12
 See also, Neubert v. Foxworthy, 71 Ill.App.3d 438, 27 Ill.Dec. 667, 389 N.E.2d 898 (1979); Uretsky v. Baschen, 47 Ill.App.3d 169, 5 Ill.Dec. 552, 361 N.E.2d 875 (1977).[5]
 
 
 13
 The question we must answer is whether this remedy, which requires prepayment of the entire tax bill and refunds erroneously collected monies without interest (and allegedly with an average delay of two years), is "plain, speedy and efficient." The Supreme Court in Department of Employment v. United States, 385 U.S. 355, 358, 87 S.Ct. 464, 466, 17 L.Ed.2d 414 (1966) left undecided the question "whether omission to provide interest on a successful refund application renders the state remedy here an inadequate one within the meaning of § 1341." See also, 28 East Jackson Enterprises v. Cullerton, 523 F.2d 439, 441 n.4 (7th Cir. 1975) Rehearing denied, 424 U.S. 959, 96 S.Ct. 1437, 47 L.Ed.2d 365 (1976). There is no dispositive precedent on this issue. Our analysis of prior judicial decisions, however, indicates that the decisions which have considered the question most carefully have concluded that the failure to pay interest on a successful refund application makes the state remedy inadequate. Further, policy considerations, the legislative history of the Tax Injunction Act, and common sense all dictate the conclusion that the Illinois remedy is inadequate.
 
 
 14
 The court's opinion in United States v. Livingston, like other opinions since the passage of section 1341, observed that,
 
 
 15
 It is well settled that a right to recover taxes illegally collected is not an adequate remedy if it does not include the right to recover interest at a reasonable rate for the period during which the taxpayer's money is withheld. Even if existence of the right be merely cast in substantial doubt, the remedy is not plain or adequate.[6]
 
 
 16
 United States v. Livingston, 179 F.Supp. 9, 15 (E.D.S.C.1959) (three-judge court) (citations omitted) aff'd per curiam, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960). See also, Mullaney v. Hess, 189 F.2d 417, 420 (9th Cir. 1951); United States v. Department of Revenue, 191 F.Supp. 723, 727 (N.D.Ill.), vacated, 368 U.S. 30, 82 S.Ct. 146, 7 L.Ed.2d 90 (1961).[7] And numerous cases prior to the passage of the 1937 Act held that the failure to pay interest on a tax refund constituted an alternative, but independent basis for concluding that the state remedy was inadequate. Educational Films Corp. v. Ward, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1931); Hopkins v. Southern Cal. Tel. Co., 275 U.S. 393, 399-400, 48 S.Ct. 180, 72 L.Ed. 329 (1928); Nutt v. Ellerbe, 56 F.2d 1058, 1062 (E.D.S.C.1932) (three-judge court); Proctor & Gamble Distrib. Co. v. Sherman, 2 F.2d 165, 166 (S.D.N.Y.1924). As the Supreme Court concluded in Educational Films,
 
 
 17
 The legal remedy . . . falls short of adequacy in at least two respects. (First) (r)efund, if any, is expressly without interest. § 219(d). See Proctor & Gamble Distributing Co. v. Sherman (D.C.) 2 F. (2d) 165; Southern California Telephone Co. v. Hopkins (C.C.A.) 13 F. (2d) 814, 820, aff'd 275 U.S. 393, 48 S.Ct. 180, 72 L.Ed. 329.
 
 
 18
 Educational Films, supra, 282 U.S. at 386, n.2, 51 S.Ct. at 171 n.2.
 
 
 19
 Defendants cite a plethora of cases which they contend demonstrate that the failure to provide interest on a tax refund does not render a remedy inadequate. All of these cases are distinguishable from the problem raised by this appeal. Several of the cases analyzed the remedy provided by the state and, as defendants indicate, determined that it was adequate. See Aluminum Co. of America v. Department of the Treasury, 522 F.2d 1120 (6th Cir. 1975); Group Assisting Sewer Proposal-Ansonia v. City of Ansonia, 448 F.Supp. 45 (D.Conn.1978); Abernathy v. Carpenter, 208 F.Supp. 793 (W.D.Mo.1962), Aff'd 373 U.S. 241, 83 S.Ct. 1295, 10 L.Ed.2d 409 (1963). But in each of these decisions the adequacy of the state remedy was based, in part, either on the availability of interest on refunds, Aluminum Co., supra, 552 F.2d at 1127-28; Group Assisting, supra, 448 F.Supp. at 47, or on the fact that prepayment of the contested tax was not required. Abernathy, supra, 208 F.Supp. at 796-97.[8] And in the other cases upholding the adequacy of a state remedy cited by defendants, the relationship of nonpayment of interest to the adequacy of the state remedy apparently never was raised by the litigants and certainly never was expressly considered by the courts. Board of County Comm'rs v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313 (1939); Stratton v. St. Louis Southwestern Ry., 284 U.S. 530, 52 S.Ct. 222, 76 L.Ed. 465 (1932); Bland v. McHann, 463 F.2d 21 (5th Cir. 1972), Cert. denied, 410 U.S. 966, 93 S.Ct. 1438, 35 L.Ed.2d 700 (1973); Bertelsen & Petersen Eng'r Co. v. United States, 60 F.2d 745 (1st Cir. 1932); United States v. Board of County Comm'rs, 13 F.Supp. 641 (N.D.Okl.1936); United States v. Board of Comm'rs, 6 F.Supp. 401 (W.D.Okl.1934).[9] Thus none of these cases provides persuasive support for defendants' position.
 
 
 20
 The legislative history of the Tax Injunction Act similarly lends little support to defendant's contention that the failure to pay interest on tax refunds does not affect the adequacy of the state remedy. The two purposes of the Act, as described in the legislative history, were, first, to eliminate discrimination between state citizens who were required to pursue relief regarding illegal tax assessments in the state court and foreign corporations operating in the state which were able to sue under the diversity jurisdiction of the federal courts and, second, to prevent these foreign corporations, which frequently refused to pay their large state taxes and then initiated dilatory and expensive legal actions in the federal courts, from paralyzing state fiscal operations. S.Rep.No.1035, 75th Cong., 1st Sess. (1937); 81 Cong.Rec. 1415-17 (1937). See also, Garrett, supra, 538 F.2d at 72; Tramel v. Schrader, 505 F.2d 1310, 1315-16 (5th Cir. 1975). Neither of these purposes conflicts with the rule suggested by federal cases decided prior to 1937 that the failure to provide for interest makes a tax refund remedy inadequate. See, Supra, p. 534.
 
 
 21
 Perhaps even more importantly, the express principle underlying both of these congressional goals was that justice is best served by the speedy judicial resolution of tax disputes. Foreign corporations had been able to secure financial benefits for themselves by delaying tax collection through federal court litigation; state governments often were forced to accept ungenerous out-of-court settlements in order to secure sorely needed tax revenues. The Tax Injunction Act was a response to the "needs of many States for a more prompt disposition of tax controversies . . . ." S.Rep., Supra, at 3. And excerpts from Congressional hearings regarding the Johnson Act of 1934, 28 U.S.C. § 1342, inserted into the Congressional Record in support of the Tax Injunction Act (often compared during its enactment process to the Johnson Act), decried the financial hardships imposed on a litigant drawn into federal court who is often unable to pursue his claim to a final judicial resolution. 81 Cong.Rec. 1415, 1417 (1937). The Illinois tax grievance remedy, which forbids the recovery of interest and allegedly involves a two year delay prior to refund payment, gives a financial incentive to one of the parties (the County) to delay dispute resolution and imposes severe financial hardships on private parties seeking to redress their grievances. Although the roles have been reversed, the available Illinois remedy exacerbates much the same evils as the Tax Injunction Act was designed to eliminate. See generally Garrett, supra, 538 F.2d at 72. It is unlikely that the drafters of the 1937 Act would have considered the Illinois statutory remedy "plain, speedy and efficient."
 
 
 22
 This concern with the economics of dispute resolution was reflected in the Supreme Court's decision in Georgia R. R. v. Redwine, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335 (1952). In Redwine, one of the state remedies available to the aggrieved taxpayer required filing over three hundred separate claims in fourteen different counties in order to achieve full redress. And so while redress theoretically was possible in the state courts, the remedy's diseconomies rendered it inadequate. Id. at 303, 72 S.Ct. 321. See also, 28 East Jackson, supra, 523 F.2d at 441 (state remedy requiring full payment of tax not "available" when petitioner did not have and could not borrow sufficient funds to pay the full tax); Federal Courts, supra, at 217. Under present Illinois law, as under Georgia law in Redwine, relief is possible, but it imposes undue costs on taxpayers seeking redress. Under these circumstances, the state remedy is inadequate.
 
 
 23
 The most succinct analysis of the inadequacy of a tax grievance procedure which requires prepayment of the entire tax and then refuses to pay interest on the refunds awarded successful litigants was provided by Learned Hand over fifty years ago:
 
 
 24
 (I)t seems to me plain that it is not an adequate remedy, after taking away a man's money as a condition of allowing him to contest his tax, merely to hand it back, when, no matter how long after, he establishes that he ought never to have been required to pay at all. Whatever may have been our archaic notions about interest, in modern financial communities a dollar to-day is worth more than a dollar next year, and to ignore the interval as immaterial is to contradict well-settled beliefs about value. The present use of my money is itself a thing of value, and, if I get no compensation for its loss, my remedy does not altogether right my wrong.
 
 
 25
 Proctor & Gamble, supra, 2 F.2d at 166. We agree with the conclusion of the court in United States v. Livingston, that
 
 
 26
 (A state) may allow interest upon refunds of taxes or not as she chooses. If she does not make clear the existence of the right to recover such interest, however, she necessarily opens the door to equitable relief to taxpayers and forecloses a remission of the parties to the legal remedy provided by her statutes.
 
 
 27
 179 F.Supp. at 15. The failure to pay interest on refunds to taxpayers who successfully challenge their tax assessment pursuant to the Illinois statutory procedures renders that remedy inadequate. Thus, the availability of this remedy in the state courts does not bar federal jurisdiction over injunction actions brought by aggrieved Cook County taxpayers.
 
 B.
 
 28
 Defendants also contend that plaintiff has a "plain, speedy and efficient remedy" in the state courts because she can challenge her allegedly discriminatory tax assessment by bringing an action pursuant to 42 U.S.C. § 1983 in an Illinois court.[10] We do not agree with defendant's contention, and we hold that the availability of a section 1983 action in state court does not bar federal jurisdiction over a section 1983 action alleging constitutional deprivations arising from an illegal state tax exaction.
 
 
 29
 As a predicate to their contention that a section 1983 state court action bars federal jurisdiction in this case, defendants, citing two recent Illinois appellate cases, assert that state courts have jurisdiction to hear federal civil rights actions filed pursuant to 42 U.S.C. § 1983. See Bohacs v. Reid, 63 Ill.App.3d 477, 20 Ill.Dec. 304, 379 N.E.2d 1372 (1978); Alberty v. Daniel, 25 Ill.App.3d 291, 323 N.E.2d 110 (1974). While this statement may well be true, it is by no means a settled rule of law.[11]
 
 
 30
 Similarly, plaintiff argues that an Illinois court adjudicating her section 1983 claim would be bound by the rule of Lakefront that a taxpayer who has secured a refund cannot receive interest on that refund. See, supra, p. 533. Consequently, plaintiff contends that this definitive precedent in state law renders a state section 1983 remedy inadequate. Plaintiff's argument assumes that an Illinois court adjudicating a federal claim under section 1983 would be free to apply Illinois equity law, a proposition that is far from certain.[12] Nevertheless, we believe that the doubt whether an Illinois court would apply federal equity law instead of the Illinois rule against interest on tax refunds renders a remedy pursuant to a possible section 1983 action in the state court less than plain.
 
 
 31
 But independent of this uncertainty about the adequacy of the remedy, an exact reading of the Tax Injunction Act and strict attention to the principles underlying section 1983 compel the conclusion that the availability of a state court action under section 1983 does not bar federal jurisdiction. Reading the Tax Injunction Act to bar federal court jurisdiction on the basis of the possibility of bringing a federal cause of action under section 1983 in state court leads to an untenable conclusion: the Tax Injunction Act would bar federal jurisdiction in all cases involving state tax operations without exception. Defendants' position assumes that state courts generally have concurrent jurisdiction over federal causes of actions, including section 1983, and that a state court hearing that federal claim would apply federal equity law (if the state court were free to apply state equity law then, in this case, interest would not be available as part of the remedy and the remedy would be inadequate). But if both these assumptions were true, there would be no class of cases that would escape the bar on federal court jurisdiction contained in the Tax Injunction Act. Whatever action could be brought in federal court, given inadequate state statutory and judicial remedies, also could be brought in state court under federal law pursuant to the state court's concurrent jurisdiction. See generally, Iowa-Des Moines Nat'l Bank v. Bennett, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931); General Oil, supra, 209 U.S. 211, 28 S.Ct. 475. Federal courts never would have jurisdiction over actions brought by taxpayers regarding illegal state tax assessments.
 
 
 32
 Although Congress possesses the power to legislate this result, there is no indication that the Tax Injunction Act was meant to do so.[13] The language of the Act on its face contemplates cases which will escape its jurisdictional proscription, and the explanations of the statute contained in its legislative history unmistakably corroborate this reading of the Act. See supra p. 532. See also 81 Cong.Rec. 1416 (1937) (remarks of Sen. Bone).[14] There is no reason to conclude that defendants' reading of the Tax Injunction Act a reading which would lead to a result clearly not contemplated by the drafters of the Act is correct.
 
 
 33
 Defendants' position makes even less sense as a practical matter. In order to argue that a section 1983 action brought in an Illinois court constitutes an adequate remedy, defendants must presume that federal equity law applies. But then it is difficult to conceive of any significant state autonomy interest that is served by barring federal court jurisdiction. Defendants' position leads to the scenario of a state court adjudicating a cause of action and formulating a remedy and throughout required to apply federal law. It would be difficult to say that this is less of an incursion into state autonomy than an action in federal court. And this result undermines judicial efficiency and legal expertise. It is unlikely that when Congress drafted the Tax Injunction Act it intended that all disputes in which state legal and equitable remedies were inadequate be resolved in state court under these conditions.
 
 
 34
 Our conclusion that the possibility of bringing a section 1983 action in state court does not bar, pursuant to the Tax Injunction Act, federal jurisdiction over an action alleging that state taxes were exacted unconstitutionally, is corroborated by the principles and policies underlying 42 U.S.C. § 1983.[15] The sponsors, supporters and even the opponents of the predecessor of section 1983 likely would be shocked indeed if they were to learn that the possibility of bringing a section 1983 action in state court had barred a section 1983 plaintiff from federal court.
 
 
 35
 The Supreme Court in Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) observed:
 
 
 36
 Section 1983 opened the federal courts to private citizens, offering A uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation.
 
 
 37
 Id. at 239, 92 S.Ct. at 2160 (emphasis added). When Congress passed the predecessor of section 1983,
 
 
 38
 (it) clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts.
 
 
 39
 Id. at 242, 92 S.Ct. at 2162.[16] The failure of state courts to vindicate federal rights was one of the primary motivations for passage of the predecessor of section 1983. Id. at 240-42, 92 S.Ct. 2151. See also, Wiecek, The Reconstruction of Federal Judicial Power, 1863-1875, 13 Am.J.Legal Hist. 333, 338 (1969); Developments, supra, at 1142-50. The legislative history of the Act is replete with references to the inability and unwillingness of state courts to protect federal rights and, as a result, to the need to insure access to the federal courts. See Mitchum, supra, 407 U.S. at 241 n.31, 92 S.Ct. 2151; Developments, supra, at 1154-55 nn.112, 114. As the Supreme Court stated in Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961):
 
 
 40
 It is abundantly clear that one reason the legislation was passed was to afford a federal right in federal courts . . . .
 
 
 41
 Defendants ask us to turn section 1983 on its head. If their argument were accepted, access to federal courts for the protection of Fourteenth Amendment rights would be denied because of the availability in state courts of "a uniquely federal remedy" which Congress enacted precisely because of the failure of state courts to protect federal rights. We do not embrace this perverse result. The legislative history of the statute compels our conclusion that the availability of a section 1983 action in state court does not bar federal jurisdiction over a section 1983 action brought in federal court to vindicate constitutional rights allegedly violated by an illegal state tax assessment.
 
 
 42
 Our review of the respective legislative histories of the Tax Injunction Act and section 1983 leads to the conclusion that Congress did not intend that the possibility of bringing a section 1983 action in state court would bar, pursuant to the Tax Injunction Act, federal jurisdiction over a section 1983 action brought in federal court. Further, we have concluded that there is no legal or equitable remedy available under Illinois law which is "plain, speedy and efficient."
 
 
 43
 For these reasons, we conclude that federal jurisdiction over plaintiff's suit was proper. The judgment of the district court is reversed.
 
 
 
 *
 The Honorable Leonard P. Moore, Senior Circuit Judge of the United States Court of Appeals for the Second Circuit, is sitting by designation
 
 
 [1]
 Although LaSalle National Bank, as trustee under land trust No. 44891, is the named plaintiff-appellant, Patricia Cook, as sole beneficiary under the trust, is the real party in interest
 
 
 [2]
 For purposes of this appeal, the factual allegations of plaintiff's complaint are assumed to be true. See e. g. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 174-75, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); Fed.R.Civ.P. 12(b)(1)
 
 
 [3]
 The district court ruled:
 
 
 [1]
 The availability of equitable and declaratory relief in the Illinois state courts provides the plaintiff with a "plain, speedy and efficient" remedy. Tully v. Griffin, 429 U.S. 68, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976)
 
 
 [2]
 The non-payment of interest on refunds pursuant to Sections 675 and 716 of Chapter 120, Illinois Revised Statutes, does not render the remedy in Illinois courts not "plain, speedy and efficient."
 LaSalle Nat'l Bank v. Rosewell, No. 78-3746 (N.D.Ill. Nov. 30, 1978). The district court, however, did grant plaintiff an injunction pending this appeal pursuant to Fed.R.Civ.P. 62(c).
 
 
 [4]
 Federal equity practice prior to the passage of the Tax Injunction Act of 1937 refrained from exercising jurisdiction over actions challenging state tax systems as long as an "adequate" state remedy was available. There was some question whether enactment of the 1937 Act was meant to alter this standard. See P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's, The Federal Courts & the Federal System, 979 (2d ed. 1973) (hereinafter cited as Hart & Wechsler.) There is nothing in the legislative history of the Act to suggest that such a change was contemplated by the Act's drafters or sponsors. The legislative history focuses entirely on the problems caused by injunctions issued by district courts exercising their diversity jurisdiction. See S.Rep.No.1035, 75th Cong., 1st Sess. (1937); H.Rep.No.1503, 75th Cong., 1st Sess. (1937); 81 Cong.Rec. 1415-17 (1937). See also Fulton Market Cold Storage Co. v. Cullerton, 582 F.2d 1071, 1074-75 (7th Cir. 1978) Cert. den. 439 U.S. 1122, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979). Garrett v. Bamford, 538 F.2d 63, 66-67 (3d Cir.), Cert. den. 429 U.S. 977, 97 S.Ct. 485, 50 L.Ed.2d 585 (1976). And in Great Lakes Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943), the Supreme Court described the passage of the Tax Injunction Act as congressional confirmation of traditional federal equity practice. Id. at 298-99, 63 S.Ct. 1070. See also, Tully, supra, 429 U.S. at 73, 97 S.Ct. 219. The Supreme Court has used the traditional standard and the statutory standard interchangeably, and so shall we. See Spector Motor Service, Inc. v. O'Connor, 340 U.S. 602, 605, 71 S.Ct. 508, 95 L.Ed. 573 (1951); Hillsborough v. Cromwell, 326 U.S. 620, 624, 626, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 105-106, 65 S.Ct. 152, 89 L.Ed. 101 (1944). See also Wright, Federal Courts 217 (3d ed. 1976) (hereinafter cited as Federal Courts )
 The substantive interchangeability of the two standards is important for more than the linguistic flexibility it makes possible. To the extent that the standards are the same, cases decided prior to the enactment of the 1937 Act remain instructive in defining the circumstances in which a federal court may or may not exercise jurisdiction over an injunction action involving a state tax system.
 
 
 [5]
 The 81st Illinois General Assembly last session failed to enact HB 451 and HB 1317, bills introduced which would have required payment of interest on tax refunds
 
 
 [6]
 Numerous courts have held that uncertainty about the adequacy of a state court remedy is sufficient to lift the § 1341 bar on federal court jurisdiction over equitable actions regarding state tax systems. See e. g. Tully, supra, 429 U.S. at 76, 97 S.Ct. 219; Hillsborough, supra, 326 U.S. at 629, 66 S.Ct. 445; 28 East Jackson, supra, 523 F.2d 439; Garrett, supra, 538 F.2d at 70. Thus, even if the Lakefront rule had not been so definitively and recently articulated, uncertainty about the award of interest to a successful claimant under the Illinois statutory remedy would be sufficient to render the remedy inadequate
 
 
 [7]
 None of these cases ruled on the precise issue raised in this appeal. Livingston held that the failure to pay interest was "another reason" why § 1341 was inapplicable to the taxpayer's suit in that case. Livingston, supra, 179 F.Supp. at 13. Mullaney, after stating the legal principle, concluded that the remedy in question was adequate. And Department of Revenue concluded that the failure to pay interest to a successful claimant on the cost of a bond which had to be put up to pursue a remedy was analogous to the failure to pay interest on a tax refund, and, therefore, the remedy involving the bond was inadequate. Nevertheless, all of these cases lend substantial support to the conclusion that the failure to pay interest, alone, renders a remedy inadequate
 
 
 [8]
 The decisions in Group Assisting and Abernathy also are based, in the alternative, on the inconsequential amounts of money involved if interest were not recoverable on a contested tax payment. We do not decide the question whether a remedy is inadequate if it fails to provide for interest when the dollar amount in question is extremely small. We do note, however, that both the remedies considered in those cases provided for resolution of the dispute within a period of several weeks and the interest involved amounted to under $50.00. In the instant case, delays of two years are alleged and hundreds of dollars in lost interest are at stake for each year in which a wrongful assessment is made
 
 
 [9]
 In Bland the complaining taxpayer did object to the adequacy of the Mississippi remedy on the grounds, Inter alia, that Mississippi law made "no provision for the recovery of interest on illegally assessed taxes," 463 F.2d at 28, n.24, but the court's opinion did not discuss this specific contention. And in Stratton which, like the other cases cited by defendants, did not address the relationship of the nonavailability of interest to the adequacy of the state remedy, the Court concluded:
 There being a legal remedy for the recovery of the tax, no case is made for invoking the jurisdiction of equity to enjoin collection of it, In the absence of allegations setting up special circumstances which would render the legal remedy inadequate.
 284 U.S. at 534, 52 S.Ct. at 223 (citations omitted) (emphasis added).
 
 
 [10]
 Defendants cite several federal district court decisions which have held, at least in the alternative, that the availability of a § 1983 action in state court constitutes an adequate remedy for an aggrieved taxpayer under § 1341, thereby precluding federal court jurisdiction over the taxpayer's complaint. See Advertiser Co. v. Wallace, 446 F.Supp. 677 (M.D.Ala.1978); Green v. Klinkofe, 422 F.Supp. 1021 (N.D.Ind.1976); Horn v. O'Cheskey, 378 F.Supp. 1280 (D.N.M.1974). None of these cases justifies its holding with any detailed analysis of the relationship between the two statutes. In addition, Advertiser, which held that a plaintiff seeking damages under § 1983 was barred from federal court by the Tax Injunction Act, is in direct conflict with our decision in Fulton Market, supra, 582 F.2d 1071
 
 
 [11]
 Most judicial decisions which have concluded that state courts can entertain § 1983 actions have reached their result with little analysis, relying on the general principle of concurrent jurisdiction. See Long v. District of Columbia, 152 U.S.App.D.C. 187, 469 F.2d 927, 937 (D.C.Cir. 1972); Bohacs, supra, 63 Ill.App.3d 477, 20 Ill.Dec. 304, 379 N.E.2d 1372; Alberty, supra, 25 Ill.App.3d 291, 323 N.E.2d 110. See generally, Houston v. Moore, 18 U.S. (5 Wheat.) 1, 25-27, 5 L.Ed. 19 (1820); Hamilton, The Federalist Papers, No. 82. But courts which more closely have examined the concerns underlying the adoption of the civil rights statute have been more hard-pressed to justify state court jurisdiction over § 1983 actions. Compare Terry v. Kolski, 78 Wis.2d 475, 254 N.W.2d 704 (1977) (state courts open to § 1983 actions) With Terry., id. 254 N.W.2d at 713 Et seq. (dissenting opinion) and Chamberlain v. Brown, 223 Tenn. 25, 442 S.W.2d 248 (1969) (no state jurisdiction for § 1983 actions)
 
 
 [12]
 In Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), the Supreme Court held that in a state court action pursuant to 42 U.S.C. § 1982, questions regarding compensatory damages for the deprivation of a federal right are governed by federal standards under 42 U.S.C. § 1988. The Court also noted that a federal court can fashion an effective equitable remedy and that,
 That federal remedy for the protection of a federal right is available in the state court, if that court is empowered to grant injunctive relief, generally, as is the Virginia court. Va.Code Ann. § 8-610 (1957 Repl.Vol.).
 Id. at 238, 90 S.Ct. at 405.
 Sullivan does not directly answer the question posed here: when state equitable law is at odds with federal law (as we have concluded it is here with regard to the adequacy of the Illinois refund remedy), which law would apply in a § 1983 action. While the inference from Sullivan is that federal law would apply, See also Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947); Ward v. Board of County Comm'rs (Love County), 253 U.S. 17, 40 S.Ct. 419, 64 L.Ed. 751 (1920); General Oil Co. v. Crain, 209 U.S. 211, 28 S.Ct. 475, 52 L.Ed. 754 (1908), that conclusion is not settled. See generally, Fulton Market, supra, 582 F.2d at 1080; Hart & Wechsler, supra, at 434-37, 521-24; Comment, Racial Discrimination and the Tax Injunction Act, 90 Harv.L.Rev. 616, 623-24 n.49 (1977); Note, State Enforcement of Federally Created Rights, 73 Harv.L.Rev. 1551, 1556-61 (1960).
 
 
 [13]
 And, as the Fifth Circuit stated in Hargrave v. McKinney, 413 F.2d 320, 326 (5th Cir. 1969):
 Encroachments on the federal judiciary's power to vindicate rights allegedly guaranteed by the Constitution must be construed narrowly. Cf. Phillips v. United States, 1941, 312 U.S. 246, 251, 61 S.Ct. 480, 85 L.Ed. 800.
 
 
 [14]
 There is a suggestion implicit in the legislative history of the Act that it is only when a state legal or equitable remedy is available and adequate not when there is a federal remedy which can be brought in state court that the jurisdictional bar applies. The Act's sponsor explained that "specific provision is made that the suit will be taken out of the jurisdiction of the Federal court only if a plain, speedy, and efficient remedy may be had at law or in equity in the courts of the State." 81 Cong.Rec. 1416 (1937) (remarks of Sen. Bone). Senator Bone also excerpted a portion of the Judiciary Committee Report on the Johnson Act and included it in the Congressional Record. He said the excerpt was "applicable to (the Tax Injunction Act) in the same manner that (it was) applicable to the Johnson Bill. Id. The excerpt described the archetype of the disputes meant to be excluded from federal court and added:
 And all the time in this dispute there is no Federal question involved. There is a dispute arising under a State statute or law of other origin and nothing more.
 Id. at 1417. See Garrett, supra, 538 F.2d at 66-67.
 
 
 [15]
 This assumes, of course, that there is no adequate legal or equitable remedy at state law
 
 
 [16]
 The congressional legislation passed to effectuate the post-Civil War amendments gave the federal courts primary responsibility for vindicating the rights expressed in those amendments:
 (The federal courts supplanted) the state courts as the principal forum for enforcing federal law. . . ..
 This significant expansion of federal judicial power seems to reflect both the Republicans' belief that the judiciary was the most appropriate institution to effectuate their "moderate revolution" in civil rights and their increasing distrust of the willingness of state judges to enforce vigorously national laws or fulfill national policies. Rather than providing for a large-scale displacement of state police power by congressional regulation of intrastate affairs, the Republicans sought to create in the federal courts opportunities for litigants . . . to invoke the power of the national government to safeguard nationally secured liberties threatened by the action or inaction of the states.
 Developments in the Law Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1142, 1150 (1977) (citations omitted).