Corrected Opinion Filed 1/6/22 by Clerk of the Supreme Court

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2022 ND 3

State of North Dakota,                                          Plaintiff and Appellee

      v.

Emile Dargbeh,                                          Defendant and Appellant

### No. 20210175

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John C. Irby, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

SheraLynn Ternes, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Leah R. Carlson, West Fargo, N.D., for defendant and appellant.

**Tufte, Justice.**

[¶1]   Emile Dargbeh appeals from a criminal judgment entered after a jury found him guilty of two counts of forgery in violation of N.D.C.C. § 12.1-24-01(1)(b). We affirm, concluding that the court did not abuse its discretion in admitting evidence and testimony in relation to a third, uncharged check and that there was sufficient evidence to sustain the conviction.

I

[¶2]   In March and April of 2020, Dargbeh cashed three forged checks from Dacotah Paper Company. Each check was written out to Emile Dargbeh in an amount ranging from $1,900 to $2,180. The State obtained video showing Dargbeh cashing two of the three checks. The State charged Dargbeh with one count of forgery for each check recorded on video but did not include a third count for the third check not recorded on video.

[¶3]   A jury trial was held in May 2021. At the trial, the State mentioned the third check during its opening statements. Defense objected to the introduction of any evidence or testimony in relation to this third check under N.D.R.Ev. 404(b) and 403. The district court overruled the objection, stating the third check could be used to show that Dargbeh had knowledge of the alleged forgery scheme and that he knew the checks were fraudulent. During Detective Dane Ronning's testimony, the State introduced all three checks cashed by Dargbeh into evidence. Defense counsel objected to the introduction of the third check as evidence, and the court overruled the objection.

[¶4]   The State presented evidence that 26 people were involved in passing fraudulent checks on Dacotah Paper's account. Approximately 30 forged checks were passed through the account, resulting in a loss of $63,000. The individuals who cashed the checks would keep a share of the money while the person who printed the fraudulent checks would keep the rest. Detective Ronning testified that he believed Toki Agamiri—Dargbeh's roommate—was the leader behind

the forgery ring. Video footage was presented to the jury showing Agamiri with Dargbeh when Dargbeh cashed one of the fraudulent checks. Additionally, the State presented evidence that two cars rented to Dargbeh were used by other individuals cashing fraudulent checks. Further, the jury heard testimony from the vice president of accounting at Dacotah Paper who testified that Dacotah Paper issued no checks to Dargbeh and had never employed him.

[¶5] Dargbeh testified that he had no knowledge the checks in question were forged or that the checks were part of a larger forgery scheme. He testified that he cashed the checks for Agamiri, an employee of Dacotah Paper Company, because Agamiri "had issues with his [bank] account" so he cashed the checks for him "to help him out." Dargbeh testified that no "red flags" were raised and that he had no suspicion about the checks being forged despite the fact that the checks were written out to him and not to Agamiri, an employee of Dacotah Paper Company. He testified that while he did not receive a share of any of the forged checks, he did receive some money from one of the checks to repay a debt owed to Dargbeh by Agamiri. The jury ultimately found Dargbeh guilty on both counts of forgery. He appeals from the criminal judgment.

II

[¶6] Dargbeh argues the district court erred in allowing evidence of the third check. Dargbeh argues the court failed to apply the required three-step analysis for considering the admissibility of prior bad acts evidence under N.D.R.Ev. 404(b) and failed to give a jury instruction regarding the limited purpose of that evidence. He also argues the evidence and testimony about the third check prejudiced him and the court failed to consider whether, under N.D.R.Ev. 403, the danger of unfair prejudice substantially outweighed the probative value of the evidence. The State, on the other hand, argues the third check is not Rule 404(b) evidence; rather, it is evidence of activity in furtherance of the charged criminal offense.

[¶7] This Court reviews a district court's evidentiary ruling under an abuse of discretion standard. *State v. Hirschkorn*, 2020 ND 268, ¶ 6, 952 N.W.2d 225. "A district court abuses its discretion in evidentiary rulings when it acts

arbitrarily, capriciously, or unreasonably, or it misinterprets or misapplies the law." *State v. Polk*, 2020 ND 248, ¶ 10, 950 N.W.2d 764.

[¶8]   This Court has "warned of the dangers inherent in allowing evidence of other acts to show propensity and of tempting a jury to convict a defendant for actions other than the charged misconduct." *State v. Shaw*, 2016 ND 171, ¶ 7, 883 N.W.2d 889. Rule 404(b), N.D.R.Ev., governs the admissibility of evidence involving a prior crime, wrong, or other act. It provides:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The prosecutor must:
> (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
> (B) do so before trial or during trial if the court, for good cause, excuses lack of pretrial notice.

[¶9]   "Prior acts that are evidence of activity in furtherance of the same criminal activity a defendant is charged with may avoid exclusion under N.D.R.Ev. 404(b)." *State v. Buckley*, 2010 ND 248, ¶ 35, 792 N.W.2d 518. "Rule 404(b) only excludes evidence of other acts and crimes committed by the defendant when they are *independent* of the charged crime." *State v. Christensen*, 1997 ND 57, ¶ 8, 561 N.W.2d 631. Thus, evidence is 404(b) evidence only when the evidence is of "a wholly separate and independent crime" apart from the charged crime. *See id.*

[¶10] Furthermore, evidence of prior bad acts is admissible when "the evidence provides a more complete story of the crime by putting it in context of happenings near in time and place." *State v. Gaede*, 2007 ND 125, ¶ 26, 736 N.W.2d 418. Evidence of a defendant's prior conduct that was "intertwined with

the factual scenario leading up to" the charged crime is admissible to provide "context of happenings" for the jury. *Id*. at ¶ 28.

[¶11] The State argues that because the three separate checks involve the same course of conduct and the same victim, the third check is not an independent and wholly separate crime, but instead is inextricably intertwined with the two charged checks. Further, the State contends that the third check provided a more complete story of the crime as well. Dargbeh argues the State conceded at trial that the third check was Rule 404(b) evidence and now contends for the first time on appeal that the third check was not Rule 404(b) evidence to begin with. We read the record differently. Responding to the objection at trial, the State discussed the similarities of all three checks, stating, "All of these checks are inherently related as they all happened in a short time frame, the same exact checks, the logo, they're all made out from the same account number." Further, the State also argued that the third check provided the jury a more complete story because the checks are "so inherently related that it's pretty tough to bring up one without the other two." Although the court admitted the third check under a permissible purpose of Rule 404(b), the State also argued at trial that the third check was evidence of activity in furtherance of the same criminal activity currently being charged to avoid exclusion under Rule 404(b). We conclude the State did not concede that the third check was 404(b) evidence at trial.

[¶12] Our case law has repeatedly held that prior bad acts evidence that is inextricably linked to the charged offense is not Rule 404(b) evidence. In *Buckley*, 2010 ND 248, ¶¶ 35, 38, this Court held that evidence of the defendant's frequent marijuana use "was part of the conduct leading" to the manslaughter charge involving the malnourishment death of her infant daughter, rather than independent prior bad acts evidence. Further, in *State v. Paul*, 2009 ND 120, ¶ 25, 769 N.W.2d 416, and *Christensen*, 1997 ND 57, ¶ 8, we held that evidence about prior sexual abuse and touching perpetrated by the defendants against their victims was not 404(b) evidence but instead was evidence of activity in furtherance of the charged criminal activity. Similarly, in *State v. Alvarado*, 2008 ND 203, ¶ 12, 757 N.W.2d 570, we held that evidence

about prior acts of domestic violence perpetrated by the defendant did not raise a Rule 404(b) issue because they were not independent acts from the charged crime. Lastly, in *Steinbach v. State*, 2015 ND 34, ¶¶ 17-19, 859 N.W.2d 1, we held that testimony regarding the defendant's prior drinking and fighting was not prohibited under Rule 404(b), but "was admissible evidence of the pattern of the same activity between the same people" that helped provide a "clearer" and "more complete story of the crime."

[¶13] Moreover, the federal courts have held that evidence of uncharged fraudulent transactions does not fall within the context of Rule 404(b) if the uncharged transactions are inextricably intertwined with the charged crime. "When evidence of other crimes is so blended or connected, with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged, it is admissible as an integral part of the immediate context of the crime charged." *United States v. Thomas*, 760 F.3d 879, 883 (8th Cir. 2014). In *United States v. Hall*, the defendant's uncharged fraudulent trust transactions did not fall within prior bad acts evidence because the evidence "was relevant to show [the defendant] intended to defraud the [] investors" involved in the charged fraudulent scheme. 604 F.3d 539, 540, 544 (8th Cir. 2010). While the defendant was charged with crimes concerning only one trust, evidence of fraudulent transactions with a second trust was "inextricably intertwined with the charged crime" because the two trusts were "parts of the same fraudulent scheme" operated by the defendant "in the same manner." *Id.* at 543. Finally, in *United States v. Wilson*, the defendant was charged with six counts of theft of government funds, each count alleging Wilson deposited a fraudulent tax-refund check. 788 F.3d 1298, 1312 (11th Cir. 2015). The court concluded evidence of 31 uncharged tax-refund checks was not prior bad acts evidence because the checks "were clearly linked in time and circumstances with the charged crimes." *Id.* at 1314. The court reasoned the uncharged checks were intrinsic to the charged crimes because "the checks arose out of the same series of transactions as the charged offenses and exhibited the same fraudulent indicators as the checks in the charged counts." *Id.*

5

[¶14] Here, we conclude evidence of the uncharged check was not 404(b) evidence. This third check was not an "independent" and "wholly separate crime." Although a separate crime in that it may have supported an additional criminal charge, it was not prohibited character evidence because it was part of the same series of fraudulent transactions involved in the charged crimes against Dargbeh. Similar to *Steinbach*, the check was part of a "pattern of the same activity [involving] the same [person]." Here, the pattern was Dargbeh's cashing multiple forged checks on Dacotah Paper's account. Additionally, the third check was "inextricably intertwined" and "blended with the one[s] on trial" because the third check was made out to the same person, contained the same logo, used the same account number, and was cashed during the same time period as were the two charged checks in question. Because the third check was clearly linked in time and to the circumstances of the two charged checks, proof of the two checks incidentally involves the third. We hold that the third check was not a prior bad act that was independent from the charged crime, but instead was evidence of activity in furtherance of the charged offenses.

[¶15] Additionally, the third check was used to provide a more complete story of the crime for the jury. The State used the third check to help establish that Dargbeh had knowledge the checks were fraudulent and were part of a larger forgery scheme. The State argued that it was not an isolated transaction in which Dargbeh cashed a single fraudulent check, but instead was a series of unexplained transactions in which he cashed three separate checks from a business with which he has no connections. The State summarized its theory in its closing argument, stating that while "a person may try to claim ignorance or mistake one time but [after] three times," it shows the knowledge element is met. We conclude that the third check puts Dargbeh's participation in the forgery scheme into context for the jury because cashing the third check occurred "near the time and place" of the two charged counts of forgery. Because the third check was not impermissible character evidence within the meaning of N.D.R.Ev. 404, the court was not required to complete the three-step analysis or give a limiting instruction. Therefore, we hold that the court did not abuse its discretion in admitting evidence about the third check.

6

# III

[¶16] Dargbeh also argues there was insufficient evidence to sustain a conviction for two counts of forgery under N.D.C.C. § 12.1-24-01(1)(b). When this Court considers a challenge to the sufficiency of the evidence,

> we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to warrant a conviction. A conviction rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor.

*State v. Johnson*, 2021 ND 161, ¶ 7, 964 N.W.2d 500.

[¶17] To sustain a conviction for the offense of forgery, the State must prove: (1) the defendant knowingly uttered or possessed a forged check on the date alleged; (2) the defendant uttered or possessed such forged check pursuant to a scheme to defraud another of money in excess of $1,000; and (3) the defendant acted with intent to deceive or harm another person or knowingly facilitated that deception or harm by another. Dargbeh argues the State did not prove beyond a reasonable doubt that he knew the checks were forged, that he possessed these checks pursuant to a scheme to defraud another of money, and that he acted with intent to deceive or harm the government or another person. The State presented the following evidence: Dargbeh cashed checks made out to him from a company he had never been employed by and did not do business with; he cashed three separate checks; he was with Toki Agamiri—the alleged leader of the forgery scheme—when Dargbeh cashed one of the forged checks; his roommate and younger brother were both involved in the forgery scheme; and two vehicles rented to Dargbeh were used by other individuals while cashing fraudulent checks in the forgery scheme. A reasonable fact finder could find knowledge and intent on the basis of this circumstantial evidence presented by the State. We conclude the evidence is sufficient to sustain the guilty verdict for two counts of forgery.

IV

[¶18] The criminal judgment is affirmed.

[¶19] Jon J. Jensen, C.J.
        Gerald W. VandeWalle
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte